2056 Jessica Frye v. CSX Transportation Incorporated et al. Oral argument not to exceed 15 minutes per side Mr. Parrish for the plaintiff appellant good morning morning may it be so court counsel I represent the family of Cheyenne Frye who on April 15, 2011 was a 13-year-old girl who was struck and killed by a freight train being operated by defendant appellant I believe CSX Railroad over a crossing that was maintained by Appley Conrail the owner of the crossing was different than the train being operated over the crossing and those were the two railroad defendants in the case the brunt of my comments this morning in the limited time available will emphasize the first two points that we say are errors that were committed by the trial court I'm certainly happy to touch upon and other issues as well but beginning with the first error that we allege is that evidence was admitted at trial with regard to side effects of medication that was found during the autopsy of Cheyenne Frye now the medication was called cetylopram the reason why it was error for the trial court to admit this evidence is because it first of all was not relevant it did not go to prove more probable or improbable any fact at issue in the case and I say that because it is clear that the record is void of any evidence of any effect or more specifically side effect that the presence of this medication found during the medical examiner's report had upon Cheyenne Frye what happened at trial was is that railroads brought in medical examiner and a toxicologist who testified that basically went through a litany of things that might be possible side effects if in fact someone has had cetylopram which was prescribed to Cheyenne along with Adderall with regard to ADHD the side effect that then was emphasized in the underlying case after over counsel's objection they were allowed to proceed with the testimony and the admission of information from the pharmaceutical manufacturer of dozens of pages of possible things that might be associated with this medication not unlike if we're watching a TV commercial we see take whatever medication with the healthy happy people that we see in the commercial which is probably an accurate reflection of what the medication does that then has where my question comes in nobody disputes how difficult this case is but the first question is relevance and and if there is a question of whether of how she ended up on the track and why she didn't move then couldn't this be relevant and then come in and then you did exactly what you should have done you cross-examined let me get the names dr. Hepler and dr. Somerset and elicited that they did not diagnose Cheyenne they did not opine on her psychological condition and doesn't that mean it's relevant evidence which you have shown to a jury does not matter in this case I believe the distinction is and and and certainly with regard to losing the objection then then proceeded with the cross-examination as your honor has identified but I think the difference is here is that you have to have something on a threshold basis for L for evidence to be admissible beyond conjecture why is the why finding that in her system sufficient to make the testimony relevant but a jury question that is defined by what else is elicited on cross-examination I think one indication of why it doesn't get there is even identified by the trial courts order which even in denying the some indication and I would submit that for evidence to be admissible that it has to be something more than a mere possibility or a or something that is nothing more than speculative because otherwise that would mean and we've cited in our brief a couple of examples of where simply like reading through a PDR of all the possible side effects is not sufficient for substances found within that is a decedent and the reason for that is is that it then creates a basically a panoply of all possible things that that might exist that don't have the the basis the basic reliability that is necessary for evidence to be admitted at trial reliability this was these side effects were found by the FDA right the side effects were that with regard to Peter pediatric use that might increase the likelihood of suicidal ideation was identified in a study that ended up in the the official paperwork through the FDA that I believe as part of that process I just can't say exactly but that's where the information came from the identification of the study that was discussed foundational fact seems pretty reliable that this is a site this is a potential side effect I don't believe there's any dispute as to whether it's a side effect the problem arises is when it is then being attributed to a side effect that Cheyenne Frye actually experienced or had and there was no evidence of that and so there's evidence obviously that there was testimony that there was evidence that she was on the track she had earbuds in listening to music struggling with her bike that was as was identified by officer Bernard's a reporting officer that the train crew reported immediately after the wreck that she was that her bike was hung up in the the train and so wasn't there also some contradictory testimony that she stood back it had not cross arms but it had flashing flashing lights yes your honor if there is that testimony that she stood back and then stepped out there is there is contradictory testimony that occurred at trial and the contradictory testimony was that Cheyenne was straddling a bicycle at the edge of the crossing and did not proceed across the crossing surface itself until immediately before impact now at the but what was reported to the police at the time was it about a quarter mile away approximately 25 to 30 seconds away she was seen struggling with her bike on the crossing surface and that and doesn't that make it a jury question it makes it a jury question as to what the maybe the train crew could or could could not have done or what Cheyenne herself did I don't see how we make the leap to saying that this was that this was a side effect of a medication that's kicked in I think that that planted that specter into the case that it was clearly unfairly prejudicial with there being no evidence that she had ever suffered any side effect there was no testimony there was no evidence of there ever being such a side effect on the prejudicial point the cases you cited seemed to involve instances of product liability or product defect there was a there was a tread separation case there yes your honor that is the answer to your question but I think the distinguishing fact and in those cases it was being argued that it was a that the that the condition was a contributing factor to the cause and a comparative sense which even in a product liability case there can be fault compared to the to the plaintiff to the extent that it that his or her actions contributed to the cause of the collision or the the incident also but yes those were not railroad crossing cases no I see I hit my time you will have your full rebuttal all right okay thank you thank you may it please the court Joseph McDonald on behalf of the defendants since mr. Parrish wanted to emphasize those two arguments his first two I'll also address those unless the court has questions on some of the other issues as to the drugs there is no dispute that she had this italic parameter system we had the toxicologist come in we laid the foundation for his opinion for the tests that he did and he testified that it was an antidepressant we then brought in the medical examiner dr. Hepler her dr. Somerset rather and he testified again that it was an antidepressant based on his suicidal ideation and there were warnings against prescribing this an increased possibility correct of suicidal ideation not that that was a given from I agree your honor if I overstated that I apologize but your honors questions plans counselor right on point here it was relevant we have a at the last second who was being treated for ADHD one of the points made in plaintiff's brief was that there was no evidence of any psychological or psychiatric factors which might be involved one she had the ADHD and was having problems with lack of focus which was why this drug was inference providing the relevance would be that she was failing in school she was in danger of being held back she was struggling with her weight she there were other problems that were discussed with a trial so the evidence was relevant as to provide an explanation as to what why this may have occurred do we know how long she had been on that particular drug that I guess I call it Selexa but I know it has a longer name that you it's a telepram I don't know why I can never remember that that's fine your honor I cannot tell you how long she had been on it just that her family testified that she had been having trouble in school earlier that year with focus and that was why it was prescribed I guess I was just wondering whether there had been any history of suicidal ideations anywhere along the way or it's just just apparently it possibly the one instance well we what we know about is what happened on the day of the incident and plaintiffs were free to bring in her primary care physician or whoever else they wanted to but they chose not to I mean she's stepped in front of a train with bells flat ringing horns from the train sounding the flashing lights sound the sounding the court exercised its discretion in this regard the case is cited by plaintiff the niece case the testimony was allowed as an explanation for what might have occurred with regard to the drugs in Ratner the accident was unwitnessed unlike in this case there was no evidence as to what happened at the time of the accident and additionally in Ratner they provided as I read the case it was not clear that the expert was ever allowed to testify but that the council was allowed to read from the PDR which is a little different than dr. Somerset relying on information that he obtained from the Food and Drug Administration website that would be one judicially noticeable and to the type of material relied on by an expert such as dr. Somerset but both of those cases would be the concepts in both of those cases would be applicable here wouldn't they which concept you're sorry for being no the the idea that the issue is who is at fault what caused this accident in these products liability cases it might be a defect in a product and here it might be a failure to take appropriate or timely action so I don't see I think your brief argues that these cases simply don't apply because their in the products liability case the question is did the product cause the accident and there was no evidence because I believe they were all unwitnessed as to what plaintiff was doing at the time of the accident whereas here we have evidence of what plaintiff's decedent was doing at the time of the accident and it was relevant as an explanation for her actions the Celia case too I mean that the only reason the testimony was not allowed in Celia was because they were able to raise a dauber challenge to their experts said that she could determine that the person was intoxicated by marijuana based on some level and that was shown to be defective and that opinion was kept out that's not what we have here so the concept of the case is applicable you ask yourself is this more probative or is it more prejudicial and you're just saying that you're the facts of your case distinguish you making this relevant and not one the doctor's testimony was not excluded because of any dauber challenge or a defect to as in Rantner we did lay the proper foundation for all the documentation and everything which was not done I'm getting the cases straight and I apologize Rantner and in these the testimony was allowed but you know it goes to and it doesn't go to the causation of any of the defendants the jury was instructed that there could be more than one cause and you know that there's the fact that an accident happened isn't evidence that anyone was a cause but that there could be more than one cause and while this was relevant to explain one through plaintiff's decedent actions it did not in any way excuse anything that might have been caused by Conrail I would disagree with mr. Parrish that there was no evidence that her bike was stuck on the track the record is clear on that and the officer testified to that and whether it was because she stepped down at the last minute or didn't get off it still supports the position that that may have been a cause and I guess the bottom line is under either scenario the accident was unavoidable given the fact that there's unrefuted testimony that had the brakes been away she still would have been struck by the train and the second issue had to do with the jury instructions and while mr. Parrish didn't address it I'd like to address that unless the court has more questions on the first issue he's mixing apples and oranges there the instruction that decedent could be relied on to act as a fourteen-year-old girl or could be her the decedent's standard of care was that of a fourteen-year-old girl is different than what the duty of the railroad was under this circumstance the railroads duty is described with regard to breaking or slowing a train by Michigan case law that's long been established that until a collision is imminent or the crew realizes someone's not going to get off the track there is no duty to stop or slow the train because a train crew can rely on the fact that children even as young as seven under Michigan case law will recognize the danger of a moving train and get out of the way or not step in front of it to me the district court sort of had two instructions before one was sort of general regarding assumptions about children in certain circumstances and one was very specific about train crossings right and in statutory interpretation cases the specific trumps the general and it seemed to me here that maybe the district court was trying to honor this very specific instruction instruction that would apply in this context but then it did give some form of the other more general no what it gave the instruction that it gave was that the plaintiff's decedent was held to the standard of care of a person of her age the instruction that he wanted the plaintiff's counsel requested was that the railroad had a and that's not what the law in Michigan is because she was 13 years old first of all there's no indication that they could even tell how old she was as they were approaching in the train at 43 miles an hour secondly the law is that they can rely on the fact that children even as young as seven will either not go in front of a train or get out of the way of a train the cases that he contributory negligence and that's not what the instruction that the court gave dealt with it dealt with the duty of the train crew with respect to the operation of the train and it were correctly stated what the Michigan law was the charges of hole in this case was fair and I think there's no basis to reverse the verdict in favor of defendants in that regard the our other arguments with regard to what we believe is a somewhat belated raising of the summary judgment in favor of Alan Gallagher especially given the facts in this case are set forth in the brief I mean he agreed to an instruction that said that the jury couldn't find anybody negligent because of anything Gallagher did because he had obtained summary judgment but I don't think there's any evidence he violated any duty under Michigan law given the same law we just talked about with the standard of care you know if we if the if the court did find that summary judgment should not have been granted in favor of mr. Gallagher well I don't look well I understand you don't you think that affirm on that but what's your thought on the the remedy what what happens in this this entire matter get remanded to the district court for a new trial trial justice to mr. Gallagher you have any thoughts about how that would proceed in the event I'm not saying the court would do that but I've never thought about that happening because given the fact that the engineer was found not to be negligent and he's in the same position as mr. Gallagher on the train we address officer being ours is report in our brief there was something else in mr. Parrish's brief with regard to his claimed impeachment and his reply brief of the conductor if you look at the all of mr. Gallagher's testimony at record entry 120 page IDs 36 27 to 36 28 and record entry 114 page ID 29 27 to 29 30 you'll see that he explained that he had misunderstood the question that mr. Parrish had asked him in the prior trial and explained the basis of his misunderstanding he thought there was a underlying or losing the word I apologize your honor a foundational fact in the question that it was readily apparent that someone would not get off the track and he said that that was never the situation which he saw and explained that at the trial and I don't believe he was impeached at all but I just don't see under the facts of this case I'm not presuming to say what the court will or will not do because I know that that's not my place but I just if the engineer was not negligent mr. Gallagher couldn't be negligent either under the facts of this case and in any event the accident was unavoidable because the unrefuted testimony is at the time that they first saw her it was already too late to stop the train to avoid the collision whether they saw her outside or whether they saw her on the track and they had a right to presume that she would get off the track before they got here so really their decision time was only when they made that decision which they'd be even closer than the quarter-mile as unfortunate and sad as this case is it was not the fault of the defendants and unless the court has any other questions on any of the other issues or anything I'll sit down red light just went perfect timing thank you I'd kind of like to touch on something that was toward the end of counsel's comments with regard to the time and distance there is evidence in the case that when Cheyenne Frye was first seen she was on the track between the rails there is that evidence in the record that was approximately 25 to 30 seconds before the crossing there was also evidence in the case that under those circumstances a train crew is to throw the train into emergency which is hitting a special break that dumps all air out of all wheels and locks up all wheels for it to slow as quickly as possible takes a very long time for a train to stop but the point is is that had that been done then you change the the impact at the time to something that is much more likely to be survivable than 43 miles an hour by a freight train touching very briefly with regard to the first point the evidence of trial was that she was a very happy loved girl she was killed by the train on the first afternoon of spring break I would submit that that is not when a child would try to take her own life she was on her way to get together with friends for the afternoon the evening this is the evidence that the jury heard this is the evidence of what was in the case the mere presence of citalopram as indicated in the medical examiner's report has very little probative value but then turn that and say oh she is now someone who's going to commit suicide is incredibly prejudicial and that is why we believe that that also this is with regard Conrail was found negligent for the condition of their crossing but the next question the jury answered no is was that approximate cause of her death if this what we contend was inadmissible evidence that came in with regard to suicide is what misled or confused the jury to find Conrail negligent but not the proximate cause is all the more reason why there should be a reversal on that error switching quickly to the jury instruction Michigan instruction 10.07 is what we're talking about and my understanding of the standard is to in which that it is reversible error for this not to be given was is 10.07 an accurate statement of the law it is and what it is saying is that if a defendant knew or should have known that a child was in the vicinity and you see a 13 year old girl with a bike the defendant is required to exercise greater vigilance so now we're switching to with regard to defendant CSX is operating the train the jury should have been instructed as to the greater vigilance it's not a little bit inconsistent with the pretty significant body of case law in the Michigan court system about train accidents and the duties placed upon those who operate the train which seemed fairly deferential to the train operators there are the many of these cases are cited back in a time that I believe was well before comparative fault and was dealing with contributory negligence but also and we cite in our brief case law that does take that into consideration but I do agree with you your honor that there are a lot of those cases from that time period that talk about what the particular child was doing or not doing and what the train crew could have or should have assumed I think it is also fair to say that they they are looked at on very much on a case-by-case basis but but to your point your honor yeah there are cases as cited by the railroad that talk about what the assumption a train crew can make if they see someone in close proximity I'm runs out can I ask you judge Cole's question to your friend yes side and that is if we disagreed or with the agree if we agree with you on the issue regarding summary judgment to Gallagher I think it was what would that new trial look like I had not thought of that specific question until I asked you it so I'm glad I had a few minutes to think about it here's what I believe is that there was an instruction that the court gave that specifically said you are not to consider Alan Gallagher and I believe that if the if there was the reversal because the summary judgment was improper then there would be a trial with regard to the negligence of Alan Gallagher was there evidence that was not admitted that would reflect on the corporate parents liability that was excluded I believe there was your honor and most significantly it is in and I this is not a disputed fact that within the railroads operating rules it talks about the time period in which a conductor is supposed to take action if they see something that is not being addressed by the engineer and matter of fact if I recall correctly and I think it's identified in our brief that where you would throw the train into an emergency was a little quicker access from the conductors position as opposed to the engineers position and so I believe that there are things that mr. Gallagher should have done even if mr. Fisher the engineer did not that could have prevented this incident from killing Cheyenne okay thank you mr. Parrish we appreciate your arguments today your time is expired of course and thank you again for making those arguments the case will be submitted and you may call the next case thank you